One case this morning, and it is number 20-2867, LSB Westinghouse Electric Co. And Mr. Niles-Weed and Mr. Sansone. Mr. Niles-Weed, whenever you're ready. Good morning, and may it please the court. I'm Robert Niles-Weed, and I represent Westinghouse Electric Company. I'd like to reserve three minutes for rebuttal. You sure can. One question at the outset is, why did you choose to file in the Western District of Pennsylvania? So Mr. Ellis actually brought the case in the Western District. Yeah, I'm sorry. I don't mean that. I mean, I'm sorry. You're absolutely correct. The, I guess the question is, is there concurrent jurisdiction? Do we have jurisdiction? I think, Your Honor, there is jurisdiction over the case, and we're not making an argument that's jurisdictional. Our argument is more that the effect of the code in the bankruptcy court's discharge discharged his claim. So there's jurisdiction, I believe, to hear this, or at least we're not arguing otherwise, but he doesn't have a claim because it was discharged. And the reason for that- But the discharge issue, you decided ultimately to litigate in the Pennsylvania District Court, did you not? So, Your Honor, we brought an action in the bankruptcy court in the Southern District of New York to enforce the discharge injunction, but the court below made clear that it was going to move forward with Mr. Ellis' action, which was first filed. And he had argued, and this is because that was the first filed action. So we adjourned our motion in the bankruptcy court and have been defending it in the court below and now here. So when the case reopened, when, in July of 2019, is that right? I believe that's right. So Westinghouse filed an answer. It did not mention the bankruptcy discharge. How come? We didn't raise the bankruptcy discharge issue till later. And I'll note that Ellis does not we just brought it up first in the bankruptcy court by trying to enforce the discharge order there that we proceeded in this action with the answer. And then once that- What I'm asking is what was your reasoning as to why you didn't bring it up at the outset? I'm afraid, Your Honor, I wasn't there at the outset, so I don't have the answer from what was going on at the time. But my understanding is we received this complaint and then filed an answer and then subsequently moved both for summary judgment below and to enforce the discharge order in the bankruptcy court, making exactly the arguments we're here on today in which Mr. Ellis hasn't disputed that this court can address. Let me, just to lay the groundwork here, let me give you some hypos, if you would. And I realize they may not necessarily apply to our case. I'm just trying to figure out what kind of claim is being made. Ellis' claim, let's assume his claim arose pre-petition and was reduced to a judgment pre-petition. What kind of claim would he have, Ellis, have then? He would have an ordinary pre-petition, probably unsecured claim, unless he had other arguments for a priority. And so, and I agree. Let's say, okay, his claim arose pre-petition, but he filed a suit in a district court and the case was pending as of the petition date. What kind of claim would he have then? I think he would be in the same position, Your Honor, and he could still file a claim in the bankruptcy court while his suit was pending in the district court elsewhere. And presumably, that suit would be enjoined by the automatic stay. So he couldn't move forward with it while the bankruptcy was proceeding. Now, let's assume that his claim arises post-petition, but pre-effective date, and he files a request for payment before the administrative claim bar date. What would that be? What would his likely treatment be then? He would then have the opportunity to prove his claim in the bankruptcy court, and if he could prove it, he would be guaranteed full payment, both under the code and the text of Westinghouse's plan here. What happens if the actual claim exceeds the estimated amount? So in that scenario, I mean, he would potentially have a claim, assuming it were priority, he would have to go through the process of, in the world where there weren't enough funds in the estate to pay all of the claimants, and other claimants had already been paid, he'd have to go through a proceeding in the bankruptcy court to collect on whatever the overage was. Now, here, that wouldn't have been a problem because his claim would have been paid in full from the estate. And I think that illustrates exactly the problem here because it would delay the distribution of the estate's proceeds to the other creditors if it were the case that we had to wait till the end of the limitations period and potentially estimate. And I guess my final question, just in terms of making sure I understand things, if his claim arose post effective date, what would the likely treatment be then? So then we'd be in a completely different scenario, Your Honor, he'd have a claim that arose not against the bankruptcy estate, but instead against the reorganized debtor. And then we would be in a situation where he could potentially bring that claim elsewhere. And here, I think the facts are particularly relevant here because in the Westinghouse's plan of reorganization, administrative claim liability was assigned to Windown Company, a successor separate entity. So indeed, he couldn't bring a during bankruptcy claim against the reorganized debtor here. Sometimes those claims are assigned to the organized debtor, that wasn't the case here. If it had arisen after the effective date, of course, we'd be in a different situation. And that's precisely why the effective date is such an important cutoff, because it signals the end of the existence of the estate, which is a special purpose bankruptcy entity, and the emergence of the reorganized debtor onto a fresh start. So his claim is against the predecessor entity, the estate, not the successor entity, the reorganized debtor. Mr. Nellis, what would happen? I mean, if we have this big gap between confirmation date and effective date, what happens if some claim other than administrative claim arises during that time? Is that going to get discharged or under a future plan might it be? Because with administrative claim, at least you're getting paid in full, but non-administrative claims are taking a haircut. Is your rule specifically limited to administrative claims? Yes, Your Honor. And I think it's a much easier case for administrative claims because the plan and the code guarantee full payment. And it's generally the case that claims arising after the petition will be afforded administrative claim treatment. So I think the hypothetical you're talking about won't really arise. But I agree that in a scenario where he stood to suffer a haircut, then we might be in a much more difficult question that I don't think we need to address here, because he has an administrative claim that would be paid in full. And this difficulty in that, you know, it's true that Redding talked about this in 1968, but my understanding is that the bankruptcy bar, a lot of people don't understand these to be, you know, there's some disagreement and some of the lower cases, you know, it's in an indirect way that it's for the benefit of the estate. So what do we do with that problem that maybe this has been the law this whole time, but a lot of people have been ignorant of its, you know, status as administrative claim employment lawyers don't necessarily know to run to bankruptcy court and to file a proof of claim. Should that concern us as a matter of due process notice? I don't think it should concern you, Your Honor, because the notice that he received of the effective date was quite clear that if he had a claim against the estate arising during the bankruptcy, that he had to bring it in the bankruptcy court. And I think the promise of full payment in the bankruptcy court should be incentive enough to encourage people and their counsel to bring their claims there. So I don't think there's too much of a due process where, especially in this case, when he received a clear notice and had counsel to the extent the notice was unclear at all. Well, let me ask you a permutation of Judge Bevis's question, which is your adversary has relied on Sanchez and Judge Bevis was getting to the point of the for the benefit of the estate language. And I just wanted you to comment on how would the continued employment of an individual be beneficial to the estate? I know it's not, I know that's the argument that they profess. I wanted to know what your reaction to that was. Yes, Your Honor, two points on that. The first point is that one of the most difficult challenges bankrupt entities face is retaining their employees. And I think you could see that in first day orders asking for employee payment, employee retention plans. So ensuring that employees will stay with the estate and won't jump ship to another entity is in fact essential to ensuring a bankrupt debtor's fresh start. And I think potential liability for claims arising from termination of employment is part and parcel of that. Employees who don't have a guarantee that their claims will be paid have every reason to something to note about Ellis's position here is that by arguing against administrative claim treatment, he would be harming all of the other people similarly positioned because it would be not denying them priority. And they would be forced to collect in his world along with other unsecured creditors potentially for cents on the dollar. The other point to make there is Sanchez is quite clear that it's not resolving that question. The district court below recognized that that was dicta and there's nothing in the code that suggests two separate definitions of administrative claim. I think the question, the two questions you've been asked really come down to this even forget that his counsel was a labor lawyer. Let's assume his counsel was even a bankruptcy lawyer. How was counsel even know that a termination of his client is somehow beneficial to the estate that it qualifies as a 503 admin expense claim? Your honor, I don't think that's the standard. A notice doesn't have to resolve every single potential issue that might arise. It just has to be sufficiently clear to reasonably convey the required information, which here was that if he had a claim of this sort that arose against the debtor during the bankruptcy of the type under 503, that he had to bring it in the bankruptcy court. So his counsel couldn't have advised him in an abundance of caution to file in the bankruptcy court because the alternative is a risk of non-payment. And if the expectation were that notice had to lay out in specificity, the legal basis for every single claim, identify claimants by name, et cetera, that would be entirely infeasible. And that's not what's required either in the pre-petition bar date notice or in this context. But the notice that went out on August 1st was an administrative expense bar date, right? Yes. And my question to you is how would even a bankruptcy attorney normally think if your client came to you with a, hey, I just got fired. And what would make that person think that that possibly could be an administrative expense claim? You're not really doing, you know, you're not how you and I normally would think of an administrative expense claim. You do something that preserves or benefits the estate. This guy got canned. So his termination was part and parcel of the reorganization that was at the heart of the bankruptcy and the disclosure statement describes it over 1100 positions were eliminated. So I think if he came to his counsel and said that I was just terminated by a company that is in bankruptcy, and then a few months later received a notice that says, if you have claims against this entity that is in bankruptcy, you should file them in the bankruptcy court. I don't think it's beyond even a lay person, but certainly not bankruptcy counsel or even non-specialized counsel to recognize that perhaps you should file a claim in the bankruptcy court. And again, if he did so there, he had the opportunity to receive full payment. And he hasn't said he didn't have enough time to file in the bankruptcy court. He certainly could have done so. Let me ask you this question. I'm just changing gears for a moment. Is there a circumstance in which this case can be resolved without the applicability of 1141? Yes, your honor. We've argued that section 503 independently authorizes discharge under an if there's no language in 503 that cites to discharge, alludes to discharge. How are we to intuit that? So section 503A provides that an entity can timely file a request for payment of administrative expense or may tardily file such request if permitted by the court for cause. And the second half of that provision, which was added by Congress later, is clearly intended to give the bankruptcy court exclusive authority to decide whether or not an untimely administrative expense claim should be allowed. If it were the case that administrative expense claimants could bring their claims elsewhere far into the future, that provision, which again Congress added purposefully, would be meaningless because the bankruptcy court would have no stick to enforce. Wait a second. I'm sorry, finish your question, Joe. Well, my problem is there's no specific allusion to discharge. What language can we intuit infers discharge? Because there's obviously a very specific meaning to discharge. Congress could have used the language they didn't. Help us on that. So here, I think the parallel to 1141 is helpful. I agree 503 itself doesn't speak of discharge, but the practical effect of the inability to have an administrative claim allowed is the same as discharge because the claim can't be brought and paid in an alternative. But Mr. Niles-Weed, so you say that the 503 and 1141 arguments are independent, but under the 503 argument, we'd be looking at the bar date, which is end of August, September 1. But the 1141D argument is pegged to, it would be discharged not at the end of August, but at the beginning of August on the effective date. So if each stands independently, how can there be two discharge dates? So here, the reason we already stand independently here, they're together because the bar date was included as part of the plan. So it is the effect of the plan and the bar date, either could have been done independently, but they weren't in this case to answer your question about the two separate dates. The reason the end of August date exists was to ensure that claimants had enough time to file their claims, because if a claim arose right before the effective date, they might not have had enough time if that were also the discharge date. But I think Judge Greenaway's point is you're turning the bar date into a discharge date when there's already a discharge date of August 1st. And I think you're suggesting that 503 is like a feasible discharge date. And in this case, 1141 supersedes it, but that's doing a lot with a provision that just says you can file the expense timely, or you can file it tardily, which is, that's all about the claims bar date. It's not about discharge. There are other provisions that speak to discharge. So it just, I don't understand, are we going to turn the bar date into an effective date when here they've been separated? That's a fair point in this case, Your Honor. And I don't think you have to go there because the two provisions work in tandem here, but you could imagine another case where, for example, there is no confirmed plan and no effective date. And the discharge of administrative claims is achieved only by the setting of an administrative bar date under 503. And assuming there were no discharge authority there, the bankruptcy court would be in the difficult situation of never being able to discharge administrative claims, assuming a plan never came to fruition. If there was no bar date, could you still have discharged the claim? The claim still could have been discharged, but the discharge would have had to comply with due process. So he would have had to have an adequate opportunity to raise and collect on the claim, which he had here. Now, I realized that you were, I mean, based on your answers to the preceding questions, you were talking about 503 and 1141 supposedly being independent basis, an independent basis to discharge Ellis's claim. But I thought before the district court, Westinghouse argued that 1141 was the independent basis. I don't remember that much about 503. It's more 1141D, wasn't it? So we focus in the district court on 1141D, but in our briefs in the district court, we talked about 503 and cited some of the cases like Eagle Pitcher and Collins, which figure quite prominently in the district court's decision that talk about 503 as authorizing an administrative claim. It looks like the argument got more developed or clarified on appeal because you seem to be taking what I would argue is a more reasonable position that 1141D and 503 are mutually reinforcing provisions. And that's a quote, mutually reinforcing provisions. Yes, your honor, they are mutually reinforcing and that they both address the treatment of administrative claims and show that they can be discharged. I think that the question that I was responding to from Judge Bibas was a narrower one about, is it, or I may have been Judge Greenway, I apologize, was a narrower one about whether 503 itself could independently authorize discharge in the absence of the effect of 1141. But here they're mutually reinforcing because we have a Mr. Nasweed, I have a concern about what the limiting principle is here. Are there any limits to, you know, how long after confirmation and effective date can occur? It seems like you could have situations where it occurs months as here or years afterwards, where some claims are discharged, but you know, we don't know when you're going to be able to get relief from the estate until some point in the future. What, what, what safeguards are there against, against that? So all of the safeguards that exist to prevent companies from wanting to be in bankruptcy in the first place, ensure that they won't let this period pend from confirmation to the effective date for too long. And certain of the confirmation standards are also tagged to the effective date. So it might make it difficult to achieve confirmation if the effective date were years in the future. But unfortunately, your honor, the text of 1141B, which is the provision that allows for the extension of the estate in the first place, doesn't contain that limitation. Now, D, which addresses the discharge is limited by B and that only claims against the bankruptcy estate can be discharged. So only claims that come up during the bankruptcy against the bankrupt entity will be discharged. But that said, that could take some time. And as was the case here, there are often reasonable explanations for the delay here. It had to do with regulatory approvals. Westinghouse operates in a highly regulated industry. So those delays are sometimes essential to allowing for confirmation of a plan that might require certain contingencies. So they won't, in the average case, they're quite limited, but in the extreme case where it is necessary, the effective date could be somewhat delayed. Let me go back to the question I just asked you earlier. If there were no bar date, could you still have discharged the claim? The Ninth Circuit in Zeiland held that a bankruptcy court could not have discharged claims arising between confirmation and the effective dates without first allowing for the presentation of such claims. Yes, your honor. And I think that, oh, sorry, go ahead. Go ahead. You go ahead. I think that is reflective of the sort of due process caveat I put on the claim at all and seek payment from the bankruptcy court. Then you would likely have a due process problem. So I think that was what the Zeiland court was referring to. But of course, they didn't answer this question, which is when you do have a bar date and when a claimant does receive notice of the bar date and nonetheless fails to file, whether or not it is fair to discharge them. Interesting thing about Zeiland, it has a long footnote five, which is trying to parse out 1141 D. And it says that the phrase except as otherwise provided, what does it really limit? And it found that it could limit any debt, which follows, or it could limit before the date of such confirmation. And it chose to go with the, I guess it chose to go with any debt. Does that make sense to you? I don't think so, your honor. That's not the right reading of the provision to go with any debt. And I think that the critical context provided by subsection B is instructive here, sort of on both practical and grammatical grounds. So B is similarly structured. It says except as otherwise provided in the plan, confirmation vests all of the property of the estate in the debtor. And that provision, it's not disputed here, is understood both to allow the bankruptcy court to delay the effective confirmation through the effective date, and also to provide that certain property doesn't vest in the debtor. And so the except otherwise proviso applies to sort of each of the modifiable elements in what follows. Although it's interesting in B where it says confirmation vests all the property of the estate in the debtor. Isn't that really the effective date of the confirmation? Well, I think that except as otherwise provided allows for the modification of confirmation to effective date of confirmation. It's not clear that confirmation standing alone could refer to effective date. I think then you'd have questions about when the judgment becomes final for appeal purposes that we're not dealing with here. But I think it's sufficient that the except is otherwise provided allows the confirmation to mean effective date. Well, going into D, so the except as otherwise provided, it says in this subsection, which would be D in the plan or in the order, the confirmation does X, Y, or Z. Except as otherwise provided, what do you think it modifies? So that standalone proviso modifies everything that follows. So it allows the debtor to exempt certain debts from discharge, which so modifies the any debt, but it also modifies the arose before the date of such confirmation. It allows the debtor to modify which debts can be deferred. And it also allows the debtor to exempt the debtor from any debt that may be discharged. All right. Any further questions for my colleagues? No, thank you. Thank you. We'll get you back on rebuttal. Mr. Niles-Weed. Mr. Sansone. Good morning, your honors. I must start out by saying that unlike silk stocking, Miles Gotchell, bankruptcy counsel, I'm just a plain folks country lawyer. And so I'm going to be relying on the learned opinion of the learned Judge Hornak for much of my position here. I want to be the problem there. I mean, Judge Hornak is an exceptional judge. But this is, as he conceded, is a is a difficult issue involving a couple of provisions without a whole lot of case law that's truly helpful. And so tell me what your theme is. Well, first of all, but for the very reason that the unusual step by the district court of inviting collateral appeal suggests that this is not a matter, as your honor, Judge Ambrose, that you raised. It's not a matter that some that some civil rights lawyer like myself would understand, even if my client brought it to me. We know that because employment counsel for the defendant didn't get it for over a year. They didn't raise the issue in their defense in their answer, nor in any motion to dismiss. So this is exactly like this is something that my client could have come to me and said, what do we do about this? I like you, I would have said the same thing. And it clearly is not a settled question because you have Judge Hornak completely disagreeing with learned counsel from Weill's Gotchell. Let me just ask some factual questions that you might be able to help us with. What was the title of Mr. Ellis? He was a senior vice president. His job was to to ensure that the projects went forward, sort of a project, senior vice president, project managing sort of. So he was a senior officer at Westinghouse. Is that correct? That's correct. And how many years had he been with Westinghouse? Roughly seven or eight, something like that. And when a senior officer is let go like this, is there a severance package? If you if you release all of your claims, yes. So in other words, if he released his claims, he would get a severance package. Yes, your honor. OK, and you're saying when he came to you decided not to release the claims and right. Right. He decided to fight this. And I want to say this about the claim by defense counsel that that this termination was part of the bankruptcy. There is no evidence in the record that this term termination had anything to do with the bankruptcy. In fact, the record doesn't include this because we didn't finish discovery. But we have evidence to suggest that Westinghouse post-bankruptcy developed a plan to get rid of older employees. And we have documentary evidence to show that. So this claim that his termination was part of bankruptcy has no support in the record. Well, I mean, you said in your brief that the employment discrimination claim could only be resolved by an article three judge, not a bankruptcy judge. But wouldn't the typical reaction is we're in bankruptcy court. He got discharged. Therefore, shouldn't the first place you look is do I possibly have a claim in the bankruptcy or at least prophylactically file a claim in the bankruptcy case just to preserve my position? Well, the trouble with that is that when you do that, you waive a lot of your rights, starting with the right to a jury trial. Not only does the district court have to agree with the bankruptcy judge to allow a jury trial in a bankruptcy case, the defense has to agree to it as well. So the defense holds the key to whether or not a jury trial is available to a plaintiff when the law clearly provides for a jury trial in these matters. Why is it that it would have to be the bankruptcy court? I mean, it might be complicated, but you could arrange for lifting the automatic stay long enough to it to, you know, once the proof of claim is filed to allow that, you know, that the trial could go forward in another court, even if the judgment is ultimately collected. I mean, couldn't the two courts cooperate in that way? Well, first of all, the defense has to agree to a jury trial. So they can thwart this claim for if it's in the bankruptcy court. You're right. I mean, in order for the bankruptcy judge to order a jury trial, no matter where it's held. Well, is the bankruptcy court technically ordering a jury trial or allowing the proof of claim to kind of freeze or hold on to enough money to satisfy potential judgment and then allow the trial to go ahead in the district court, wherever it would happen? I don't know. I mean, I don't know whether the law provides for that or not. It's the bankruptcy code, as I read it again, I'm illiterate in much of this. The bankruptcy code seems to suggest this is a decision for the bankruptcy judge in conjunction with the district court's approval of it. But it's the bankruptcy court judge's decision. And that decision turns on whether the defense agrees. And so if they don't agree, you don't get a jury trial. Well, you spend a lot of time in your brief trying to employ Sanchez to say there's no benefit to the estate. So this claim can't be an administrative expense claim. But reading seems pretty straightforward in saying that it is. How do we get around that? My focus in both Sanchez reading and in Ray Ybarra is even if that's so, it doesn't appear that 503 talks about discharge ability. It talks about availability of an administrative expense claim for some of these claims. So if you opted to do that, you could. But Judge Hornack takes the position that none of those cases provide for discharge ability under 503. Well, obviously, your adversary tried to answer whether this could be done independently, that is 503 on by itself. And I think what I got from him is that no, the answer is no, maybe possibly, but really that 503 needs to be read with 1141. When you do those two things, how do you, based on reading at all, come away with the answer that in the end, it's not potentially dischargeable? Well, first of all, you start with Holywell, which the defense takes position that Judge Thomas got it wrong. He was just inaccurate. But he said, we don't see how 1141 combined creditors with respect to post-confirmation claims. Then you take this court's opinion. Is Holywell broad enough to have application here? Yeah. I mean, Holywell was a tax liability assessed after the effective date. I mean, how does that really apply to our case? Well, because like in Holywell, this is a post-confirmation claim. And Judge Thomas says that post-confirmation claims aren't part of the bankruptcy. And by the way, a creditor under section 10110 in that opinion is a holder of a pre-confirmation claim. Isn't that a super generous opinion because you have the United States appearing on a tax claim and the issue is, can the United States recover on this tax claim? I'm having trouble with the applicability of that particular principle to this case. You know, I don't know the answer to the question except to say that they're both pre-confirm, they're both talking about pre and post-confirmation claims. Yeah. But Holywell, again, it was a claim against a liquidating trustee because the estate no longer existed after the plan took effect. It wasn't an administrative expense claim against the estate. So I don't understand how Holywell really applies to our case. Well, I mean, as I said, it seems that the general proposition set forth by Judge Thomas should apply to all post-confirmation claims. So then you move to this court's holding in Arctic, in Ray Arctic Glacier. But the problem also is that you've got other problems with Holywell, but it didn't appear to, there's a distinction between confirmation date and effective date. Confirmation dates when you get the order from the court confirming a plan, but it goes effective sometimes right away, sometimes months later, because in some cases you need regulatory approval, for example. And I don't think the court focused on the distinction between those two concepts. Well, then move to this court's opinion in Arctic, which refines the Holywell opinion. Yeah, but Arctic dealt, which I think Judge Bibas wrote, that talks about res judicata effects of a plan. It was not about discharge of claims through a bar date. I'm not sure it refines Holywell anyway, but you've got some troubles relying on Arctic. And I know the author is ready to jump in. I mean, the fact situation was a different one. It's true that it mentioned the fact that they had taken subject to the plan, they were bound because of the consent, but it didn't have any occasion to draw a line between consent-based and non-consent-based plans, claims. That just wasn't before the court. I understand Judge Fornak believes that the important impact of Arctic is that it relates to challenges to the plan. And the confirmation order is a final judgment that bars later challenges to the plan. And that this did not implicate, I mean, the point that the judge made was firing Tim Ellis wasn't part of the plan. And I think that's the right argument to make. And by the way, the defense relies on a couple of cases that say that employment claims like this are dischargeable as administrative expense claims, but both cases are inapposite. First of all, the Third Circuit case, Boyle, that they cite arose pre-confirmation. And so therefore isn't the same as this case. The Reddiford case from the First Circuit is not a good opinion in my judgment, because it talks about how the reinstatement issue can be solved by a money payment. And therefore, it can be included as an administrative expense claim. But my argument, and it goes back to the the preferred remedy in these cases. And when you take this into a bankruptcy court, you take that out of the ability of that judge to make that determination. And the mere payment of money isn't the same as reinstatement. And so you once again, you lose that portion of the coverage. And by the way, you also lose the EEOC's ability to mediate the case when you go with the bankruptcy court. And as I said, Your Honor, your thought that the bankruptcy judge could order the case to be tried in a district court, I don't know if there's any support in the record in any case, nor in the bankruptcy code to support that that can be done. Nor do I know of any example. Of course, I'm not an expert in these matters, but I haven't read any example that says that that has been done in any employment case. I also did want to make a... line drawing. What rule would we have to either apply or formulate to permit claims that arise beyond the effective date and beyond the administrative claims bar date? How should we think about this? One of the points that the Judge Hornak made in his opinion was he was concerned about the amount of time between the confirmation date and the effective date, and there was no effective line drawing. But how should we think about what you're asking us to do, which is something beyond the effective date and beyond the administrative expense claims bar date? I mean, first of all, I think that when a party like my client no ability to participate in the bankruptcy pre-confirmation, he should not be held to the plan because he'd have any chance to object to it or any other thing. Well, you could still object to a plan. For example, let's say that a plan provided you wanted cash for a claim, and the plan provides that you get paid in widgets. You could come in afterwards and say, even though I didn't get notice or think I wasn't involved at that time when the plan was confirmed, nonetheless, you have the ability to go back and say, no, I don't want to get paid in widgets. I have a right to get paid in cash. Well, my understanding is that the confirmation of the plan is res judicata. That order of becoming a final order that you didn't have an ability to meaningfully participate in the bankruptcy. And that's what Judge Hornak argued. It's also why he argued against the interpretation by the defense of the phrase that's at issue here, except as otherwise provided. Let's just say, suppose the plan said it would pay all admin expense claims. All what? I'm sorry, Judge. All administrative expense creditors in widgets rather than cash. And all the pre-confirmation administrative expense creditors agreed. But Ellis, who was a post-confirmation creditor, he did not agree. Could he still challenge his treatment under the plan after confirmation? I think that the beginning challenge is he does not get full relief from the bankruptcy court. I think the answer is yes. He can come in and say, I'm not going to get full relief. I'm not going to get the benefit of the EEOC mediation program. I'm not going to get a jury trial unless the defense allows it. I'm not going to get reinstatement unless an article three judge somehow gets involved, which I don't know how that would happen. I think the answer is yes. He should argue, I didn't have any chance to yell about this before. I shouldn't be held to this now. And I think that claims that arise post-confirmation like this, employment claims should be exempted from the bankruptcy estate. They shouldn't be administrative expense claims. So you mean there should be no, so in answer to my question, you'd say there should be no time limit. And as we think about a rule, the rule would be whenever it comes in, it's okay. My argument, and again, this is so simplistic because of my lack of education on this subject, but if the plans confirms what the estate is and what the debts are that are going to be discharged, arises after that fact, and unless you can qualify that as an administrative expense claim, then it shouldn't be part of the bankruptcy. And the fact that, I mean, there's the argument is that this is not an administrative expense claim. It doesn't benefit the bankruptcy estate. It isn't part of a transaction with the bankruptcy estate. Therefore it shouldn't be considered an administrative expense claim. And that's what judge Hornak argued. Any further questions of my colleagues? No, thank you. Okay. Thank you very much, Mr. Sansone. We'll hear on rebuttal from Mr. Niles-Weed. Thank you, your honors. Just a few quick points. First of all, council for the other side did not make any arguments about the texts of section 503 or 1141. We spent quite a bit of time discussing those in our brief in an argument today. And I think council's better to address that amounts to a concession that our reading is right. Mr. Niles-Weed, I'm looking at B1B, and there are a whole bunch of taxes, fines, penalties, other things that aren't intuitively benefiting the estate. And so the text itself suggests we need to take a pretty expansive vision of kind of the costs of continuing to run the entity, right? Because the whole point of you know, at least 503 is going to apply to a bunch of chapters, including chapter 11, that involve ongoing concerns here. And so for it to remain an ongoing concern for chapter 11, it's going to have to pay some fines, some penalties, the kinds of things that Redding read it pretty broadly as saying you need to do this. It's not benefit in a very direct sense. It's just a cost of doing business the way that a fine or a tax is. Mr. Niles-Weed, I think that's right, your honor. I think that's exactly what Redding was getting at that costs ordinarily incident to the operation of the business should be treated as administrative expenses. And 503B in defining those claims starts with including. So I think there's room in the statutory text for exactly what Redding was doing, which is saying that costs that arise while the debtor is running during the bankruptcy should be treated as should be afforded priority in payment. What is your response to the jury trial argument raised by Mr. Sansone? The response to the jury trial argument is that that's part and parcel of the bankruptcy scheme. Bankruptcy changes the rights available. If he wanted a jury trial, he could have asked for it in the bankruptcy court as he acknowledged. And the main answer to the question is just that ever procedural rights he might have gotten should have been disputed in the bankruptcy court rather than stripping the bankruptcy court's authority to administer the estate to allow collateral attack. You're in a very tough area that's between article one and article three. And it would seem that the Eighth Circuit got it right when it said that there's concurrent stay in one court and have it dealt with in another court. And then you come back and determine to what extent, I mean, maybe in the bankruptcy court, you estimate it. But why doesn't the jury trial play out in the Western District of Pennsylvania? Even if the jury trial played out, and even if Mr. Ellis could prove his claim, he would still have to go back to the bankruptcy court to bring an administrative expense to have it allowed and collect against wind down co, which is the entity paying out administrative expenses. And by setting a bar date, the bankruptcy court made clear that tardy claims that were not filed by the bar date would be allowed only for cause. So he would still be in the same problem, even if he in the world in which he had a jury trial in the alternative forum. But again, these were all issues that could have and should have been brought by Mr. Ellis to the bankruptcy court before the bar date. They mean, it almost seems like we follow what you're suggesting here, that we're asking for the Supreme Court to do another wellness decision or sternly marshal before that. I mean, why even get into that area? I don't think you need to, Your Honor, I don't think it's necessary to resolve the narrow statutory question that certified for appeal, which is just whether sections 503 and 1141 authorized the discharge of all claims arising against the estate during the bankruptcy. And I think there's a straightforward way to answer that question, which is there's no dispute that the bankruptcy court can extend the life of the estate through the effective date. And there's no dispute that it can discharge administrative claims, at least arising before confirmation. So the question is whether reading these mutually reinforcing provisions together should be understood to strip the bankruptcy court of authority that it has previously, even while empowering it to extend the life of the estate through the effective date. So I think that- What do you think would happen if the bankruptcy court in the Southern District of New York tried to tell the Western District of Pennsylvania in Article III court, it's before us, stay out of this? What do you think will happen? Assuming it were an enforceable judgment by the Southern District of New York, it would preclusive effect in the Western District of Pennsylvania. Now, as you were highlighting earlier, the proceedings below suggest that we deferred to the Western District of Pennsylvania, which made clear its intent to go forward in this case rather than try to collaterally attack its jurisdiction in the Southern District of New York. But practically, I don't think it matters. The question here is a pretty narrow statutory one. And Mr. Ellis hasn't disputed that it's a very well-defined case law that supports your position that a post-confirmation pre-effective date administrative expense claim not filed by the bar date is discharged if you don't file a proof of administrative claim prior to that date. The only thing I could find, and I think it was in your brief, is Judge Chapman's bench decision in Cumulus Media. There's not a whole lot out there, is there? There isn't, Your Honor. And I think we have a few hypotheses why that's the case. I mean, Judge Chapman's decision says that's just how 1141D works. So I think everyone participating in this space understands, as Judge Chapman said, that that's just how 1141D works. If you have fair notice and opportunity to seek payment by a bar date and you fail to do so, your claim is discharged. Now, I think the other reason why we don't see cases on this, perhaps, is that when people have an opportunity to seek full payment in the bankruptcy court, take it. And indeed, 503A allows the bankruptcy court to extend the time to file for cause. So if someone has good reason for not filing in the bankruptcy court timely, they could then bring it to the bankruptcy court and get an extension. So I think it's the rare case and hasn't made it to appeal, as few bankruptcy cases do, where someone has not taken advantage of their opportunity for full payment in the bankruptcy court and instead tried to collaterally attack the bankruptcy court's authority in a foreign forum. Thank you very much. Either my colleagues have any further questions? No, sir. Okay, thank you. Thank you to both counsel for very well-presented arguments. And we'll take the matter under advisement. I would ask counsel if they could have a transcript prepared of this oral argument and just split the cost, if you would, please. Again, very well done. Thank you. Thank you.